Thank you, good morning. May it please the court and the council, my name is Vicki Iles and I represent Riley Briones, Jr. in this case. It actually dovetails with the arguments that you just heard in the Orsinger case and also I wish to reserve two minutes for rebuttal. There are two kinds of Miller cases. One is where the juvenile stands before the court for sentencing the first time and the court must make a decision and really almost speculate on whether or not the juvenile is incorrigible. The other kind of case is what Mr. Briones' case is, which is, this is a resentencing 20 years after the fact, after Montgomery made the Miller analysis and factors retroactive. The issue here is whether Riley Briones, Jr. got a constitutionally valid sentencing hearing and it is our contention that he did not. First, I wish to address the government's additional citation of United States v. Gasca Ruiz. This case does not apply because in that case the issue is whether or not the abuse of discretion standard applies when the sentencing is guided by the sentencing guidelines. Also, did you say the question is whether he got a constitutionally invalid sentencing hearing or valid? I said that I'm invalid if I said invalid. I'm rushing because I don't have much time. I'm sorry. But in a Miller-Montgomery case, this is a constitutional issue. It really almost makes the sentencing guidelines not relevant to the judge's decision as to what sentence the judge should get. The reason this is not a sentencing guidelines case is because the guideline in Level 43 is life without parole. There is no presumptive life without parole after Miller-Montgomery. You can't start at Level 43 and say this is where the sentence, where my analysis begins. And the difference in how a court must analyze whether or not a juvenile should get life rather than some term of years. Counsel, is it your argument that in this particular case the district court did not analyze properly whether or not life should be assessed as the sentence in this case? Okay, so why don't you point us to the record where you think there was deficiency? Well, the court pronounced sentencing, which is at page 253. And starting on line 16, he considered it mitigation rather than an analysis of the factors. He considered the history of the abusive father who was, by the way, a co-defendant and whom the government even admitted during oral arguments or had sentencing, was someone that Mr. Brioni had to turn to to get permission for some of the activities. His adolescent brain at the time, the fact that it was impacted by regular and constant abuse of alcohol and other drugs, and this is the second kind of Miller Montgomery case. It was established at the sentence resentencing hearing that Mr. Brioni had, more than a month of inmate, he had no write-ups and 20 years of incarceration, some of it being at Beaumont, Texas, which is known as Bloody Beaumont. He left that with no write-ups, no write-ups at FCI Phoenix. He testified at the sentencing hearing, which he did not have to do, that he had had a job continually in prison. He got married. He had forgiven his father, which is an evidence of enough maturity that he actually now rooms with his father in prison. So, to say simply, to write off you've been a model inmate, that does not, in any way, shape, or form, give him credit for rehabilitation. Instead, the judge goes on to say, some decisions have lifelong consequences, and then he refers to the facts of the case. Now, I'm going to concede, these are not good facts. These are pretty bad facts. But on the other hand, I've been doing homicide cases for almost 20 years. I've never seen a homicide case with good facts. The issue is, do these facts, done when he was 17, and Montgomery, the defendant, was 17, so it isn't as though Montgomery involves a 14- or 15-year-old, whether these facts are sufficient to overcome the evidence of rehabilitation and the fact that this shows he was not incorrigible, and that, in fact, the defendant was not the shooter. But counsel, it sounds to me like you're taking issue with the way the district court weighed the various factors, as opposed to taking issue with the analysis and what he actually considered. So, is that appropriate for us to review the extent to which he weighed the various factors? Judge, I've not said this frankly. I do not believe that the weighing was incorrect. What I believe is that the analysis was incorrect, that he did not properly apply the Miller-Montgomery factors, which is different. How did he fail to properly apply the factors if he discussed all of the factors that he considered, including the age of the defendant, the circumstances of his upbringing, the abuse of his father, and also talked about the rehabilitation in prison? What other factors should he have discussed, or what other analysis should he have undertaken, in your view? Well, Judge, as his sentencing groundsman continues our page 254, he sort of dissolves in the facts again. So, he says in the first part, you know, you've got to model it. He didn't ever use the word rehabilitation. He said even the government conceded that there was some change. But according to them, the change was not sufficient to overcome the bad facts. But the facts are only relevant when they show that there has been a lack of rehabilitation. In a resentencing case, but here, there was ample evidence of rehabilitation, which the judge sort of just wrote off, well, you've been a model inmate, and then went into, again, the facts. So, it's backwards. Can I ask you, is it your position that the judge is not entitled to consider the underlying facts of the case, whether or not to resentence the life of the prisoner? But Miller in Montgomery said with a proposition that the facts are only relevant when sentencing a juvenile. If they show incorrigibility or an unchanging corruption, that is not what happened here. So, in this case, given the ample evidence of rehabilitation and change over 20 years, the judges dismissed that almost, you know, and you've been a model inmate, but then he goes on to say some decisions have lifelong consequences. Well, not when they're made by a juvenile. When a juvenile is shown that he can't change and he can't mature. There's been, life is reserved for those rare juvenile offenders whose crime reflects irreparable corruption. That's what Montgomery says. 136 Supreme Court Act 734. But it talks in terms of the crime. And so, it sounds to me like you're saying that the court put too much emphasis on the crime, but even Montgomery talks about the crime that was committed. Well, the crime, but judge only in I'm running out of time. I'm not going to get my chance. I'll give you time for rebuttal. This is important. The crime is only relevant to the extent that it indicates that the juvenile is irreparably corrupt, incorrigible, cannot be rehabilitated. When there is evidence of rehabilitation, as there was amply in this sentencing, then the circumstances of the crime become less important, not more important. And here, the judge focused, almost exclusively, as did the government, on the bad facts of the crime. Thank you, counsel. I'll give you time for rebuttal. Good morning. Good morning. Is there police in the court? My name is Patrick Schneider. I'm an assistant high state attorney for the District of Arizona, representing Ampley, and I was trial counsel on this matter as well. The question before this court today is whether a young man in this instance, Mr. Brionis, who was three weeks shy of 18 at the time of the incident of tenants, and who was described by the sentencing court as the pillar of strength for his other gang members in the commissioning both of this crime and a series of other crimes that went on for a year and a half and terrorized a community, is the type of individual for whom a life sentence is appropriate? Well, that's not quite right, indeed. The problem we have is whether the judge in the resentencing gave full attention to the requirement of Montgomery, and it seems to me that once the question of irreparable corruption comes up, the court has to specifically set forth enough to satisfy us that he has considered those arguments. So where does that leave us? Well, Your Honor, I agree with that, and I also believe that the judge did do that. Now, the one thing we need to remember is that that was the only purpose for this resentencing was the Hall-Miller versus Alabama and Montgomery circumstances. So this was not unknown to all the parties, and in fact, we briefed them in advance, and our sentencing memorandum went into exactly what the court had to consider, and the court indicated that it had considered the briefing of the parties that went through those things. I guess the question is, is there something that the court had considered? I mean, I'm looking at page 219 of the transcript, where it says, in addition to the PSR, I've considered the government sentencing memorandum, the defendant sentencing memorandum, I've considered the transcript of the sentencing before Judge Brumfield, I've considered the victim questionnaire and the letters on behalf of the defendant. Now, in your view, is that enough? I believe it is, Your Honor, because as I said, this is not, for instance, talking about two kinds of Miller cases. One where it's the aboriginal sentencing, and one where it's simply a resentencing. And this was a resentencing. The only issue we were dealing with was the Miller and Montgomery factors when was resentencing occurred. So everybody was focused on that, and everyone agreed that the court needed to consider those things. So I think it's clear that the court did take those things into consideration in making that determination. Opposing counsel is focused on the rehabilitation that was reflected in the record for the defendant, and their argument, I think, is that the district court was dismissive of that. It did not really grapple with that in terms of finding that it needed to make regarding the defendant being permanently incorrigible. What's your response? I don't think that the district court was dismissive. And I will concede that the defendant had a good record in prison. He'd done well in a controlled environment. But what we had before us here at this resentencing was we had a defendant who actually testified at the resentencing. And so the court had the And the defendant, instead of getting up there and acknowledging his role in the offense, his role in this gang, and his leadership, and how he sort of was the chess master who made all these people play these different roles and made sure they followed through, he minimized his involvement, both within the gang and within this particular offense. He suggested to the district court that there was never the intent to kill the victim in this case, the robbery of the subway restaurant occurred. In fact, he suggested that it was intended only to see whether or not the newest gang member, Mr. Webster, at what point he would call it off. And that did not occur. He also suggested that when the shooter, Mr. S. Chief, went back out to control with him twice while the robbery was going on, that he never once told the shooter that he should kill the victim in there. And the court said that just doesn't make sense in light of the The shooter went out twice, met with the defendant, had his vehicle as he was waiting for them to emerge, and after the second meeting, the shooter walked right back into the subway restaurant, pulled out the gun, and shot the victim in the face from across the counter. We were, of course, paying attention to what the sentencing judge actually did here. I know you're relying on page 219. Is there any other passage that we can point to, to give us comfort that we have met the Montgomery requirement, as well as the Reader requirement, and that is that the district court set forth enough to satisfy us that he had considered the irreparable corruption issue? Your Honor, I believe we have to draw some inferences from what the court indicated, but the court did indicate that it relied on many of those things. One was the pre-sentence report, the initial pre-sentence report, because we talked about the maturity of the defendant at the time that the offense was committed. And as I said before, we were three weeks away, essentially, from him turning 18. And as the court is aware, he went on thereafter to commit a series of So the concerns that we have about Miller and Montgomery, this perpetuosity or the transitory nature of the immaturity, I think aren't taken care of here. And I think the court recognized that, maybe not in so many words as by everything that it considered. The one thing it considered was the original pre-sentence report, in which the pre-sentence writer said that it was difficult sitting there and interviewing the defendant and reconciling how bright and articulate he was. And juxtaposing that against the fact that this cold-blooded killer seemed to have absolutely no concern about the killing of his own gang members and the killing of innocent bystanders. And so I think the court, in indicating that it considered all those things, was considering that. And more importantly, and maybe most importantly, was the defendant's opportunity to see that. And this was an opportunity some 20 years thereafter when the defendant had more than ample time to basically come in and say, look, I was 17 years old. I thought we could take on the world, and I didn't understand the consequences of my actions at that time. But now I do. That's not what occurred here. The defendant, some 20 years thereafter, was still minimizing involvement and still had his wife, now wife, former girlfriend, who had testified as an alibi witness for him in trial, come in and say she still didn't believe that he had been involved in any gang activity after 1992. Also, where in the transcript may we look to see where the court came closest to finding that the defendant was permanently incorrigible? Your Honor, I apologize. I don't have the S.E.R. spot setting from the original transcript, but it was a page 105 of the original. 105. It's 253 in the record. All right. I think that would be the place where the court indicated that it had considered the history of the abusive father and the defendant's youth and maturity, his adolescent brain at the time, the fact that he was impacted by regular and constant abuse of alcohol and other drugs, and that he had been in a monolith. And then say, however, that's the closest the court came, in your view, to making the determination that he was permanently incorrigible? Yes, Your Honor. All right. Thank you. I would indicate to the court that these are difficult cases. I agree with the defense counsel that these should be the rare instances in which a juvenile receives a life sentence. I believe that this is such a circumstance, and I think when we consider that, we consider both the crime and the individual themselves. I think it's the rare crime as well as the rare defendant. I think we have that here. I think what we have was an individual here who was responsible for a series of offenses, including this murder. The defendant had suggested when he testified of resensing that he didn't realize this murder was going to occur, but the facts just do not bear that out. Even the youngest member of the gang, Mr. Webster, knew going in the plan was to rob and kill this white kid who worked at the Subway restaurant. The suggestion that Mr. Briones, who drove him there, who counseled there, who encouraged him, was not aware of it certainly doesn't pass muster. Some 20 years after this offense occurred, the defendant's unwillingness to still accept responsibility, both for his actions and for the crimes that occurred thereafter, I think speaks to the fact that he is truly one of those murder juveniles for whom the life sentence is appropriate. All right. Thank you, counsel. Let's put a minute on the clock. Thank you. I wish to address a couple of issues. First of all, this business of Mr. Briones didn't come in and agree with the government's take on the evidence and the testimony that the district judge relied on in page 254 as he recounted the facts of the case. This was evidence that was presented by snitches and not by police officers even. There was no confession, and Mr. Briones did not take the stand at his trial. It is unfathomable to me that a person came up to me. Mr. Briones was there at resentencing, was he not? He was there at sentencing, but he did not. The resentencing? Yes. I'm talking about the original sentencing, the origin of the trial. He did not testify at the trial in 1996 or 97. So it is kind of unfathomable to me that someone has to admit that he's guilty after he's gone to trial when that was found guilty. He was found guilty. It was whether or not he was willing to accept the verdict he put forward. That is correct. But, Judge, it can't be that he had to give magic words to satisfy the government's view that he expressed sufficient remorse. He did express remorse, perhaps inarticulately, because, you know, he was nervous, and it's difficult for him to express that with the victim's family sitting right there. It was very emotional for you, Judge. But you heard Mr. Schneider's references to specific aspects of his testimony at the resent. Well, that is correct, but what I'm saying, Your Honor, is that a person should not have to admit after going to trial where he But he never should have to, out loud, say that. I disagree with, this would be the application of, the guideline is a 3 point, I always forget the numbers, 3E1.1. He shouldn't have to admit that. Under Miller, there's nothing in Miller-Montgomery that suggests that a lack of remorse, a lack of remorse is, cannot be aggravating. Remorse can't be mitigating. There was no, this should not have been used as aggravation. And then, to rely on a 20-year-old pre-sentence report when the judge did not order a new one, and what he said during the 1997 pre-sentence report, again, that should not have outweighed, that should not have even come into consideration on whether or not he had been rehabilitated, because we all agree, he changed. He's a model inmate. He is not incorrigible. He is not irreparably corrupted. He is a 40-year-old man who has done everything he's supposed to do while in prison, married, married after he was sentenced. And for all of that to be overcome by bad facts from the transcript of the trial, when the evidence, and even if you look at the words that the judge used, apparently, circumstantially appears on how that evidence came from Citrus, and so the fact of the rehabilitation that was shown, and the fact that he didn't use the magic words, it's interesting that the judge didn't use magic words in order to do his Montgomery analysis, but apparently Mr. Briones needed to use magic words to satisfy the fact that he felt remorse. That can't be true. Thank you. Thank you to both counsel. The case is argued and submitted for a decision by the court.
judges: O'scannlain, Rawlinson, Ezra